Lois J. HINTON, Claimant–Appellant

v.

NATIONAL LOCK CORPORATION
and Liberty Mutual Insurance
Co., Respondents.

No. 19172.

Missouri Court of Appeals,
Southern District,
Division One.

June 14, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 6, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Phillip J. Barkett, Jr., Dempster, Barkett, McClellan & Edwards, Sikeston, for appellant.

Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for respondents.

PARRISH, Chief Judge.

Lois Hinton (claimant) appeals from a final award of the Labor and Industrial Relations Commission (the commission) denying her claim for workers' compensation. This court affirms.

Claimant worked for National Lock Corporation (the employer) from June 15, 1976, until June 1990. Claimant worked a night shift for the first two years then began working a day shift. About 1982 she began working at a table assembly station performing a bolt subassembly process. She performed that function sitting at a table. Her job was to drive a small pin into a lock bolt assembly with the metal butt of a screwdriver. In an eight-hour day, she would "put out at least two thousand or twenty-four hundred" subassemblies. She was paid at a piece-work rate based on her production.

On May 13, 1987, she experienced excruciating pain in her arm while performing her routine duties. She reported her injury to her supervisor, Curt Butcher. At the end of her shift, she sought treatment from a chiropractor, Dr. Bennett. Dr. Bennett treated her for a week following her injury. She then consulted Dr. Walton, the company doctor. He scheduled her for physical therapy. It was not successful. Dr. Walton referred claimant to Dr. Kim.

Dr. Kim hospitalized claimant June 9, 1987, for a myelogram. He diagnosed her injury as a ruptured disc and a deteriorated disc. The next day Dr. Kim performed surgery to remove the ruptured disc. Claimant explained, "He did it with microsurgery to my neck here and he said he scraped the ruptured disc and the deteriorated disc, he took a bone off my hip or bone scraping." She saw Dr. Kim a final time on September 3, 1987. She returned to work after that date.

Claimant filed a claim for medical benefits from her health insurance carrier. She explained:

Q. [by claimant's attorney] Did you turn this in on your health insurance?

A. Well, I went in and talked to Sue Wheatley, she was the representative at that time and told her that I may have to have surgery. This is when I was going to Missouri Delta for the physical therapy, and I told her, I said, you know, I had to go to Dr. Kim and I didn't know what he would say and she said well, okay. And so when my bills came in they just naturally sent them to Jefferson Pilot and sent them in.

Q. Who is Jefferson Pilot?

A. That's our insurance out there. I'm pretty sure it's Jefferson Pilot.

Q. That's your health and accident carrier?

A. Yes, that I pay for. Well, they pay partial.

When claimant returned to work in September 1987, she resumed the same job she performed before. She performed those tasks until June 25, 1990. She explained what occurred on June 25:

Well, I was sitting there working with bad parts and I knew they were bad and I reported it to my supervisor who at that time was Bill McDonald, and he told me, he said, well, do what you can. Make as many as you can and so then I went to him in his office and I said I can't do it. I started hurting too bad and so he said okay, we will just pull them and so he took me off of that job and put me on another job where I was using my hand to pull down a—I'm not sure what the name of that job is, but it's a lever that you pull a lever by hand and it would press two pieces together and you press one into the other. I had to do that with my right hand. I told Gary, I said, I can't do this,

so then he put me—Gary McDonald [1] said well, put me on this other job and that was the last day that I worked. I worked on three or four different jobs that day.

Claimant received workers' compensation benefits after June 25, 1990, for the injury she sustained on that date.

On October 25, 1990, claimant filed a claim for compensation based on the injury she sustained May 13, 1987. The employer and its insurer denied the allegations in claimant's claim for compensation and further alleged that the claim was "barred by Section 287.430, Revised Statutes of Missouri, 1969." [2]

The commission, adopting the findings of fact and conclusions of law of the Administrative Law Judge who conducted claimant's hearing, found that claimant was reinjured June 25, 1990; that the June 25 incident "was filed as a separate claim ... and has previously been settled by a compromise settlement agreement." It further found:

[Claimant's] claim for compensation for her May 13, 1987 injury was filed with the Division of Workers' Compensation on October 25, 1990. The employer-insurer's answer was filed with the Division [of Workers' Compensation] on September 5, 1991 and affirmatively alleged that the [claimant's] claim for compensation was barred by the statute of limitations under Section 287.430 RSMo.

The commission concluded:

The threshold issue in the [claimant's] case is whether the [claimant's] claim for compensation was filed within the time allowed by law. The [claimant's] claim alleges that she had a "series of accidents, or, in the alternative, an incidence of occupational disease" on May 13, 1987. The [claimant's] claim for compensation, however, was not filed until October 25, 1990.

There are two relevant sections of Chapter 287 on the statute of limitations issue. For "accidents" Section 287.430 RSMo., applies, but for an incidence of occupation-

al disease, Section 287.063.3 RSMo., is controlling.

Looking first at Section 287.430, it is clear that if the [claimant's] claim is classified as an "accident", the statute of limitations will bar her claim. There was no evidence indicating that any workers' compensation benefits had been paid by the employer to toll the statute. Therefore, since no benefits were paid, the maximum time allowed for filing the claim under Section 287.430 is three years after the date of the accident. Thus, the last day for the [claimant] to file a claim for an "accident" [sic] under Section 287.430 was May 13, 1990. There is no dispute in this case that the [claimant's] claim for compensation was not filed with the Division until October 25, 1990.

The commission then explored whether claimant experienced "an 'occupational disease' under Section 287.067," saying:

The statute of limitations for occupational disease cases is modified by Section 287.-063.3, which provides in part that: "the statute of limitations referred to in Section 287.430 shall not begin to run in cases of occupational disease until it becomes reasonably discoverable and apparent that a compensible [sic] injury has been sustained".

It concluded, "Although the [claimant] may have been able to prove that she had a 'job related accident' under the *Wolfgeher* case, her injury clearly does not fall within the more narrowly defined category of occupational disease. *Wolfgeher v. Wagner Carthage [Cartage] Service, Inc.,* 646 S.W.2d 781 (Mo.App. [Mo.] 1983)."

The commission further held that even if the injury could be classified as an incidence of occupational disease, claimant would be barred from recovery by the statute of limitations, concluding, "[E]ven if the ... claim could be classified as an occupational disease, the possibility of her having a compensible [sic] injury was reasonably discoverable and apparent at the time her condition became

---

1. The record does not give an explanation for the difference in first names of Mr. McDonald as quoted by claimant.

2. The applicable statute of limitations is § 287.-430, RSMo 1986. References to statutes are to RSMo 1986.

disabling on May 13, 1987. Thus, the ... claim would still be barred under Section 287.063."

Appellate review in workers' compensation cases is undertaken in accordance with Mo. Const. art. V, § 18 and § 287.495. *Rector v. City of Springfield,* 820 S.W.2d 639, 640 (Mo.App.1991). Evidence is considered in the light most favorable to the award of the commission, and the commission's award must be upheld if it is supported by competent and substantial evidence. *Id.* Evidence that would support a finding different from that of the commission is disregarded. *Id.*

Claimant presents two points on appeal. Point I asserts that the commission's finding that claimant's injury was not an incident of occupational disease is erroneous. Point II is directed to the commission's holding that the claim for the May 13, 1987, injury was barred by the statute of limitations. Claimant contends the commission erred in holding that the claim was barred; that the statute of limitations did not begin to run "until it [was] reasonably discoverable and apparent that the [claimant] ... sustained a compensable injury which means that the [claimant was] medically advised that she ... suffered a job related accident or injury, even though she may have suspected that her injury or disease was work related."

This court finds that Point II is dispositive. It is, therefore, not necessary to address Point I.

Section 287.430 states:

No proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division [3] within two years after the date of injury or death, or the last payment made under this chapter on account of the injury or death; provided, however, that if the report of the injury or the death is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the date of injury, death, or last payment made under this chapter on account of the injury or death.

The filing of any form, report, receipt, or agreement, other than a claim for compensation, shall not toll the running of the periods of limitation provided in this section. The filing of the report of injury or death three years or more after the date of injury, death, or last payment made under this chapter on account of the injury or death, shall not toll the running of the periods of limitation provided in this section, nor shall such filing reactivate or revive the period of time in which a claim may be filed.... The statute of limitations contained in this section is one of extinction and not of repose.

However, § 287.063.3 provides, regarding occupational diseases:

The statute of limitation referred to in section 287.430 shall not begin to run in cases of occupational disease until it becomes reasonably discoverable and apparent that a compensable injury has been sustained, except that in cases of loss of hearing due to industrial noise said limitation shall not begin to run until the employee is eligible to file a claim as hereinafter provided in section 287.197.

Claimant was injured May 13, 1987. She was asked, "The event which caused your injury occurred on 5/13/87?" She answered, "Yes." She testified that in June 1987, she was diagnosed with a herniated cervical disc, C–7; that she had surgery on June 10, 1987, for that condition. Claimant did not work from the date of the injury, May 13, 1987, until September 3, 1987. After that time, she worked continuously until June 25, 1990, when she reinjured her back.

She suspected her condition was work-related. Claimant was asked, "Are you able to identify any one particular incident that occurred on May 13, 1987 as being the cause of your problems?" She answered, "Oh, yes." She explained, "Beating on those subassemblies. I know exactly."

On cross-examination claimant was asked, "Mrs. Hinton, based on your testimony today you knew on May 13, 1987 that your injury

---

**3.** "Division" as used in Chapter 287 is defined in § 287.020.9 as "the division of workers' compensation of the department of labor and industrial relations of the state of Missouri."

was probably related to your job?" She replied, "Yes."

If claimant's injury was caused by an accident on May 13, 1987, that arose out of and in the course of her employment, the claim is barred by § 287.430 because the claim was not filed within three years following the injury. Claimant suggests, however, that her injury was an incident of an occupational disease. She contends that an occupational disease does not become "reasonably discoverable and apparent" until the employee is medically advised that it is job-related.

Applying this analysis, claimant, in her brief, contends that she was not told by a physician until November 1991 that her injury was job-related. She states that Dr. Levy gave her that advice. However, the part of the transcript to which claimant's brief refers does not make reference to an examination by Dr. Levy.[4] The transcript does reveal that claimant testified that a Dr. Tellow told her, after June 1990, that the herniated disc injury that occurred in 1987 "could be from [her] job and the other surgery that Dr. Kim had done." Claimant asserts that, by reason of § 287.063.3, the three year statute of limitations imposed by § 287.430 did not commence until she was advised by a physician, after June 25, 1990, that her May 13, 1987, injury was work-related; that, therefore, the claim she filed October 25, 1990, was timely.[5]

■ "An employee with an occupational disease is not considered 'injured' until the time when the disease causes a compensable injury." *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 228 (Mo.App.1988). A compensable injury occurs when the disease causes the employee to become disabled and unable to work. *Id.* In this case, claimant became unable to work by reason of a job-related injury that occurred May 13, 1987. She did not return to work until September 3, 1987, following surgery and a period of recuperation.

■ The date when the statute of limitations commenced is the date the injury became reasonably discoverable and apparent. § 287.063.3. Determination of the date an injury was reasonably discoverable and readily apparent is a question of fact for determination by the commission. *Thomas v. Becker Metals Corp.*, 805 S.W.2d 271, 273 (Mo.App.1991). The commission found, "In this case the [claimant's] condition clearly became disabling and caused her to miss several months of work as of the date of her alleged incidence of occupational disease on May 13, 1987." The commission did not accept claimant's contention that the injury did not become reasonably discoverable and readily apparent until claimant was medically advised that her injury was work-related.

By her own testimony, claimant attributed her injury to the work she performed on May 13, 1987. Her condition was immediately disabling. She acknowledged that after her medical bills were submitted by her employer to her health insurance carrier, she suggested that they be filed with the workers' compensation carrier. She explained that she told her employer the injury was work-related although she "could not say definitely which time ... [she] hit it that made [her] back hurt."

Under the facts of this case, to hold that claimant was unable to and did not reasonably discover that her May 13, 1987, injury was work-related until after June 25, 1990, when a physician told claimant what she already knew, would be inconsistent with the plain language of § 287.063.3.[6] Point II is

**4.** A deposition of Jerome F. Levy, M.D., was admitted in evidence. Dr. Levy testified in his deposition that he examined claimant November 13, 1991. Dr. Levy stated the opinion "that all of [claimant's] problem was caused by the work activities occurring over a period of time beginning in early 1987." The deposition included as an exhibit a report from Dr. Levy dated November 21, 1991, that stated the conclusion, "In my opinion, this patient has, as a result of the accident of May 13, 1987 and the re-injury of June 25, 1990, a permanent partial disability which I would rate at forty percent (40%) of the woman as a whole."

**5.** In addressing Point II it is unnecessary to decide whether claimant's injury was caused by a work-related accident or an occupational disease and this court declines to do so.

**6.** Claimant relies on *Sellers v. Trans World Airlines*, 752 S.W.2d 413 (Mo.App.1988), for the proposition that the statute of limitations did not begin to run until after her June 25, 1990, injury

denied. The claim that is the basis for this appeal is barred by § 287.430. The award denying compensation is affirmed.

SHRUM and MONTGOMERY, JJ., concur.

because she had no written medical report prior to that time that stated her May 13, 1987, injury was work related. *Sellers* dispels claimant's reliance. It states:

> The result in this case should not be taken as an absolute in every case involving the time to start the clock on occupational diseases. Under certain circumstances, it can be foreseen the time should begin to run without having an expert's opinion in the employee's hands. The facts of each case will have to be determined on a case by case basis in this uncertain area, all under existing doctrine of construing this law liberally.

*Id.* at 417.