John HUNSICKER, Appellant,

v.

J.C. INDUSTRIES, INC., Purler, Cannon–Schulte & St. Paul Fire & Marine Co., and K. & W. Boring, Respondents.

No. WD 53033.

Missouri Court of Appeals, Western District.

Sept. 23, 1997.

John R. Igoe, St. Louis, for appellant.

Frank J. Lahey, Jr., St. Louis, for respondent K & W Boring, Inc.

Susan M. Turner, Hendren and Andrae, Jefferson City, for Respondent J.C. Industries, Inc.

Dan Chatfield, St. Louis, for Respondent Purler, Cannon–Schulte and St. Paul Fire and Marine Insurance Company.

Before ULRICH, C.J., P.J., and BERREY, Senior Judge, and SMART, J.

ULRICH, Chief Judge, Presiding Judge.

John Hunsicker appeals from the award of the Labor and Industrial Relations Commission affirming the Administrative Law Judge's (ALJ) award of $1,677.84 for six weeks of temporary total disability; $4,404.23 for permanent partial disability; and $2,320.00 for medical care against J.C. Industries, Inc. (JCI) for last exposing Mr. Hunsicker to the same kind of repetitive motion conditions that caused his carpal-tunnel syndrome. Mr. Hunsicker's two claims of error are, in essence, the same—that the Commission erred in failing to consider injuries allegedly suffered by him to his right elbow and left upper extremity as pleaded in his second amended worker's compensation claim. The Commission's decision is affirmed.

## FACTS

Mr. Hunsicker is a forty-seven-year-old man who has been employed as a construction laborer since high school. His work history is seasonal; he has worked only in the spring and summer, averaging slightly more than two hundred days of employment per year. His average work week varied from ten to sixty hours. His longest employment tenure at any one company was for a period of ten months. During one year, he was employed by ten different employers.

Mr. Hunsicker began work at Purler Cannon–Schulte Inc. (PCS) as a construction laborer in November 1988, spreading rock and installing reinforcement bars at a sewage treatment facility. He experienced physical symptoms of cramping in his right arm and pain in his right hand and wrist while employed there. Mr. Hunsicker lost no work due to these symptoms, and he did not seek medical treatment for them. PCS employed Mr. Hunsicker until December 16, 1988.

Mr. Hunsicker next became employed at K & W Boring (K & W) in January 1989, installing sewer casings under Highway 54. His work there included the use of welding-related equipment, an auger, a jackhammer, a sledge hammer, and a concrete vibrator. He slipped and fell while working and injured his right wrist and elbow on February 1, 1989. Although medical treatment was offered, he rejected it and did not obtain medical treatment for the fall while employed with K & W. He did not miss work due to the fall although the physical symptoms in his hands and arms continued. Mr. Hunsicker's employment with K & W ended on March 28, 1989.

Mr. Hunsicker next became employed on April 10, 1989, with J.C. Industries (JCI), tying iron concrete reinforcement rods. On May 11, 1989, he sought medical treatment for the symptoms in his right wrist and hand that he first experienced before his employment began at JCI. The treating physician conducted a nerve condition study that showed that Mr. Hunsicker had carpal tunnel

syndrome in his right hand. The physician also prescribed wrist splints for Mr. Hunsicker to wear at night. His employment at JCI ended on June 10, 1989.

Surgery was performed on Mr. Hunsicker's right wrist and hand on June 19, 1989, to treat the carpal tunnel syndrome. Mr. Hunsicker's treating physician released him to work on July 31, 1989.

Mr. Hunsicker filed a worker's compensation claim against K & W on June 23, 1989, alleging that his right arm, wrist, elbow, shoulder, neck and body as a whole had been injured in the February 1 "slip and fall" incident while employed with K & W. He claimed that the injury was caused when he "slipped on embankment while going to work and drill holes under the HiWay at the work site . . . " He did not claim that he had carpal tunnel syndrome or that work conditions requiring repetitive motion caused these injuries.

Mr. Hunsicker filed a first amended claim on December 19, 1989, alleging the same injuries stated in his original claim and also that the cause of injury was, besides the February 1989 "slip and falls" incident, due to repetitive motion. Mr. Hunsicker stated in his first amended claim that:

> [e]mployee, an ironworker, working on rebar was caused to continuously flex his right arm and wrist while operating pliers and wire snippers along with his left hand twisting the rebar wire in repetitive series of motions and over a period of time while employed by his employer additionally slipped on embankment aggravating his right arm and wrist while proceeding to work drilling holes under the hi-way at the worksite aggravating his condition resulting in the above described injuries.

Mr. Hunsicker remained unemployed until the spring of 1990 when he became employed with Florence Construction as a grade checker concerning road construction. His employment with Florence Construction ended in the fall of 1990.

On December 13, 1990, while unemployed, Mr. Hunsicker filed a second amended claim, asserting a new repetitive motion (operating a jack hammer) and new injuries to his left arm, elbow, shoulder and wrist, allegedly caused by his employment at K & W.

The next company Mr. Hunsicker became employed with was the "AFO" company in the spring of 1991. His job responsibilities entailed driving a truck, installing posts with a sledgehammer and working as a flag man. He filed a third amended claim on June 13, 1991, asserting that he sustained additional injuries in his right and left upper extremities. The third amended claim also added the names of the employers PCS and JCI. Mr. Hunsicker's employment at AFO ended in the winter of 1991.

Mr. Hunsicker's relevant employment and Worker's Compensation filings are summarized in chronological order:

| DATE | EMPLOYMENT | SYMPTOMS AND INJURY |
|---|---|---|
| *November 1988* | starts employment at PCS | cramping in right arm; pain in right hand & wrist |
| *December 16,1988* | ends employment at PCS | symptoms continue |
| *January 1989* | starts employment at K&W | symptoms continue |
| *February 1,1989* | K&W | "slip & fall" incident; no medical treatment; symptoms continue |
| *March 28, 1989* | ends employment at K&W | symptoms continue |
| *April 10,1989* | starts at JCI | symptoms continue |
| *May, 1989* | JCI | medical treatment sought; examination; wrist splints prescribed |
| *June 10, 1989* | ends employment at JCI | symptoms continue |

| | | |
|---|---|---|
| *June 1989* | unemployed | diagnosed with carpal tunnel syndrome |
| *June 19, 1989* | unemployed | carpal tunnel surgery performed |
| *June 23, 1989* | ORIGINAL CLAIM filed against K&W; injuries to right arm, wrist, elbow, shoulder, neck and body as a whole in "slip & fall" February 1 incident | |
| *July 31, 1989* | unemployed | released to work |
| *fall & winter 1989* | generally unemployed | occasional pain & numbness |
| *December 17, 1989* | FIRST AMENDED CLAIM filed against K&W; injuries same; repetitive motion causation added | |
| *Spring 1990* | starts at Florence Construction | symptoms of general numbness & pain |
| *August 1990* | ends employment at Florence symptoms | |
| *December 13, 1990* | SECOND AMENDED CLAIM filed against K&W; new repetitive motion causation alleged; new injuries to left arm, elbow, shoulder and wrist added | |
| *Spring 1991* | starts at "AFO" | symptoms |
| *June 13, 1991* | THIRD AMENDED CLAIM filed against K&W; employers JCI and PCS added for first time; new injuries to right and left upper extremities added | |
| *Winter 1991* | ended employment at "AFO" | |

Based on the above facts, the ALJ found that JCI was liable for $8402.07. This sum represented $2320.00 for the medical expenses resulting from Mr. Hunsicker's June 19, 1989 surgery for the carpel tunnel syndrome in his right hand; $1677.84 for six weeks of temporary total disability due to his inability to work during that time period; and $4404.23 for permanent partial disability as a result of the right carpal tunnel syndrome. The ALJ limited JCI's liability to the right carpal tunnel syndrome, finding that "[t]he record is totally devoid of evidence that the work at J.C. Industries, Inc., K & W Boring, Inc., and/or Purler, Cannon–Schulte, Inc., had anything at all to do with injuries to the Employee's right forearm and elbow or to his left upper extremity." The ALJ stated that only Mr. Hunsicker's subsequent employers could potentially be liable for the Mr. Hunsicker's additional injuries. The Commission affirmed the ALJ's decision, and this appeal ensued.

## STANDARD OF REVIEW

■ The award of the Commission is reviewed using a two-step evidentiary evaluation process to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995). The reviewing court examines the record together with all reasonable inferences to be drawn from the evidence therein, in the light most favorable to the findings and award of the Commission, to determine whether they are supported by competent and substantial evidence. *Id.* If so, the reviewing court must then determine whether the Commission's findings and award, even if supported by some competent and substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *Id.* Decisions that are clearly interpretations or applications of law, rather than determinations of fact, are reviewed for correctness without deference to the Commission's judgment. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991).

## I. THE LIABILITY OF K & W AND PCS

■ Mr. Hunsicker's third amended claim, filed on June 13, 1991, added employers JCI and PCS to his worker's compensation claim. However, in his appeal Mr. Hunsicker challenges the Commission's finding of liability only to JCI. He does not argue that either K & W or PCS are liable for his worker's compensation claim. Where a plaintiff appeals against more than one defendant but only argues the liability of one defendant in his appellate brief, the appeal against the other defendants is deemed abandoned. *De Mere v. Missouri State Highway & Transp. Comm'n,* 876 S.W.2d 652, 654 (Mo.App.1994); *Green v. Miller,* 851 S.W.2d 553, 554 (Mo.App.1993). Thus, Mr. Hunsicker's failure to challenge the Commission's finding that K & W and PCS are not liable for his injuries results in an abandonment of any claim Mr. Hunsicker may have had against either K & W or PCS.

## II. THE LIABILITY OF JCI

Mr. Hunsicker contends on appeal that the Commission erred in limiting JCI's liability for his worker's compensation claim to the right carpel tunnel syndrome. Mr. Hunsicker argues that JCI is also liable for the additional injuries sustained to his right elbow, his left upper arm and his body as a whole which were alleged in his second and third amended claims.

Carpal tunnel syndrome and cubital tunnel syndrome, which Mr. Hunsicker experienced, are known occupational diseases. *Weniger v. Pulitzer Publ'g Co.,* 860 S.W.2d 359, 360 (Mo. App.1993); *Elgersma v. DePaul Health Ctr.,* 829 S.W.2d 35, 36 (Mo.App.1992). Worker's compensation claims for occupational diseases are analyzed under section 287.063 of the Missouri Worker's Compensation Act which states:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists. ■ 2. The employer liable for compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

§ 287.063 RSMo. (1994). A determination that the employee has been "compensably injured" is necessary before the state can assess liability against any employer under section 287.063 of the Worker's Compensation Act. *Hinton v. National Lock Corp.,* 879 S.W.2d 713, 717 (Mo.App.1994) (citing section 287.063 RSMo). Generally, an employee is "compensably injured" where there is medical evidence of a direct causal connection between the conditions under which the work is done and the occupational disease. *Estes v. Noranda Aluminum, Inc.,* 574 S.W.2d 34, 38 (Mo.App.1978). An employee with an occupational disease is "compensably injured" when the employee suffers a demonstrated loss of earning ability. *Coloney v. Accurate Superior Scale Co.,* 952 S.W.2d 755, 759 (Mo. App.1997).

■ Mr. Hunsicker's compensable injury under section 287.063 is not contested. The treating physicians believe that prior repetitive motion work conditions created Mr. Hunsicker's carpal tunnel syndrome and cubital tunnel syndrome. The ALJ generally concluded that the "[e]mployee did sustain an injury to his right hand and wrist, right carpal tunnel syndrome, resulting from repetitive trauma that he had suffered while in the employment as a laborer." Mr. Hunsicker began missing work July 1989, due to these occupational injuries. His absense from his employment because of the injuries he sustained was substantial evidence of the requisite loss of earning capacity. Thus, the evidence supports the Commission's finding that Mr. Hunsicker was compensably injured under section 287.063.

■ Once an employee is found to have been compensably injured under 287.063 the employer liable for the employee's injuries is determined. The last exposure rule provides that the employer who last exposed the employee to the occupational hazard that caused the disease prior to the filing of the claim,

regardless of the length of time of such last exposure, is liable for the employee's injury. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995); *Anderson v. Noel T. Adams Ambulance Dist.*, 931 S.W.2d 850, 853 (Mo.App.1996). Thus, if the work conditions experienced by the employee caused the employee's injury and the employer was also the last employer to expose the employee to the injury causing occupational hazard before the claim was filed, the employer incurs liability under section 287.067. *Id.*

The ALJ, applying the "last exposure" rule, found that:

The record is totally devoid of evidence that the work at J.C. Industries, Inc., K & W Boring, Inc., and/or Purler, Cannon–Schulte, Inc., had anything at all to do with injuries to the Employee's right forearm and elbow or to his left upper extremity. It is obvious from the evidence that the Employee worked for various employers after his release from Dr. Eckenrode in 1989, which subsequent employment exposed him to additional hazards consistent with carpal tunnel syndrome and cubital tunnel syndrome.

The Commission affirmed the finding of the ALJ. Mr. Hunsicker argues that the Commission erred in not finding JCI liable for his additional injuries.

Analysis of the facts reveals that the "last exposure" rule does not support a holding that JCI is liable for the additional injuries to Mr. Hunsicker's right forearm and elbow or to his left upper extremity. Mr. Hunsicker did not allege injuries to his right forearm and elbow or to his left upper extremity until he filed his second amended claim. Mr. Hunsicker did not file a second amended claim until after his employment at Florence Construction had ended. While employed at Florence Construction Mr. Hunsicker performed manual labor which required repetitive motions just like the manual labor he experienced while employed while at JCI. Thus, Florence, like JCI, exposed Mr. Hunsicker to occupational hazards that may have caused his occupational injuries. Because the last exposure rule imposes liability only on the last employer to expose the employee to the injury, only Florence could arguably be liable for these additional injuries, because it and not JCI last exposed Mr. Hunsicker to the injury causing occupational hazards.

Similarly, Mr. Hunsicker's third amended claim was filed after he began working at AFO. While employed at AFO, Mr. Hunsicker was exposed to the same occupational hazards that he experienced while working at JCI. Because Mr. Hunsicker was exposed to the same occupational hazards while employed at AFO, JCI was not the last employer to expose Mr. Hunsicker to the occupational hazards causing his injuries. AFO, therefore, is arguably liable for Mr. Hunsicker's injuries under the last exposure rule. JCI, however, cannot be held liable for the claimed injuries.

■■■■■ Mr. Hunsicker argues, however, that JCI is nevertheless liable under the last exposure rule because his third amended claim "relates back" to its original claim that was filed immediately after his employment at JCI ended. Amended claims relate back to the date of filing of the original complaint so as to hold an employer liable where the injuries alleged in the amended claim perfect or amplify the original claim. *Ford v. American Brake Shoe Co.*, 252 S.W.2d 649, 652 (Mo.App.1952). Where the injuries alleged in the amended claim are "new and distinct", however, the claimed injuries will not relate back to the original claim. *Id.* Mr. Hunsicker alleged only injuries relating to his right carpel tunnel syndrome in his original and first amended claims. He did not assert injuries to his right forearm and elbow or to his left upper extremity until he filed his third and fourth amended claims over one year later. The injuries to his right forearm and elbow and to his left upper extremity constitute "new and distinct" claims because these injuries were not part of the right carpel tunnel syndrome claim for which JCI was held liable. Because the injuries to Mr. Hunsicker's right forearm and elbow and left upper extremity constituted new injuries which occurred after his employment at JCI ended and after he had been employed by both Florence and AFO, JCI cannot be held liable for those injures.

The Commission did not err in finding JCI was not liable for the injuries alleged in Mr. Hunsicker's second and third amended worker's compensation claims. The Commission's decision is affirmed.

SMART, J., and BERREY, Senior Judge, by appointment, concur.