John H. DAVIDSON and Una Jean
Davidson, Respondent,

v.

Edward KENNEY, Appellant.

No. WD 54577.

Missouri Court of Appeals,
Western District.

July 21, 1998.

Daniel R. Dykstra, Kansas City, for appellant.

Tammy J. Glick, Platte City, for respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Edward Kenney appeals the trial court's judgment against him and in favor of plaintiffs John and Una Davidson for $5,121.00 in an unlawful detainer action. He argues that the trial court erred in entering judgment for the Davidsons because his tenancy had not

been lawfully terminated in that he did not receive timely notice of the termination. We agree that recovery for unlawful detainer was not warranted because Mr. Kenney did not receive the required notice of termination, and we, therefore, reverse. However, because the Davidsons have stated facts entitling them to recover past-due rent and damages, we remand to allow them to amend their pleadings to assert such a claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Davidsons own a building in Parkville, Missouri consisting of two one-bedroom apartments. On May 26, 1993, the Davidsons entered into a contract to lease the first-floor apartment to Edward Kenney for one year, from June 1, 1993, to May 31, 1994. Under the terms of the lease, rent of $425.00 per month was due on the first day of each month. The lease also provided that if a new lease were not signed at the end of the original lease term, the tenancy would continue as a month-to-month tenancy with all of the other conditions remaining the same.

Mr. Kenney continued to live in the apartment after the original lease term expired on May 31, 1994, and began a month-to-month tenancy. On September 1, 1995, the Davidsons increased Mr. Kenney's rent to $450.00 per month and increased the fees for late payment to $5.00 per day. By the end of August 1996, the Davidsons became dissatisfied with Mr. Kenney's conduct and care of the premises and decided to terminate his tenancy. They drafted a letter to Mr. Kenney notifying him that he needed to vacate by September 30, 1996. The letter was dated August 28, 1996, and stated:

> Please be advised that as of this date you are hereby notified to vacate the property at 802 East Street, Parkville, Missouri on September 30th, 1996.

> Please consider this a thirty day written notice as called for in our rental agreement.

> An inspection of the property will be made at that time.

The Davidsons were unable to locate Mr. Kenny the day they wrote the letter or for the following week. They therefore did not serve him with the notice to vacate until he delivered his September rent check to them on September 6, 1996. Although the notice still purported to be a "thirty day written notice" to vacate, it obviously was not served 30 days prior to September 30, 1996, the date on which the notice required Mr. Kenny to vacate the property.

Mr. Kenney did not vacate the apartment by September 30, 1996. Rather, he remained in the apartment for the month of October 1996, but failed to pay the rent for that month. On October 31, 1996, the Davidsons gave Mr. Kenney a new letter notifying him to vacate the premises immediately. Mr. Kenney continued to remain in possession of the apartment and again failed to pay his November 1996 rent.

On November 6, 1996, the Davidsons filed a Complaint for Unlawful Detainer in Platte County. The Complaint alleged that the Davidsons had given Mr. Kenney notice to vacate the premises on September 6, 1996, and on October 31, 1996. The Complaint stated that the Davidsons had "sustained damages by reason of said unlawful and willful holding over in an amount yet to be determined" and requested "judgment for the possession of said premises and for said damages."

Mr. Kenney finally moved out of the apartment on December 11, 1996, without paying the then past-due rent and late charges for October, November and December 1996. The Davidsons recovered possession of the premises on December 12, 1996. They found what they alleged to be substantial damages to the property, including dirty, torn carpeting which had been chewed and urinated on by a dog, requiring it to be thrown away; damage to the floor from the dog's urination; missing draperies, drapery rods and curtains; construction of a wall and holes in the ceiling, smashed mirrors, broken doors and duct work, and other damage.

The trial court held a hearing in the Unlawful Detainer action on May 22, 1997. Mr. and Mrs. Davidson were the only two witnesses to testify. The Davidsons offered evidence showing the cost of repairs to be $2,621.26, showing past-due rent of $1,350.00

(which would be doubled under the unlawful detainer statute) and late fees of $375.00. On May 30, 1997, the trial judge entered judgment for the Davidsons in the amount of $5,121.00.[1] Mr. Kenney appeals.

## II. STANDARD OF REVIEW

■ The trial court's decision in a court-tried case will not be disturbed on appeal unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision is presumed correct, and the appellant has the burden of showing error. *Kerr v. Jennings,* 886 S.W.2d 117, 123 (Mo. App.1994).

## III. LEGAL ANALYSIS

The action which the Davidsons brought against Mr. Kenney was styled as a Complaint for Unlawful Detainer. Unlawful detainer is defined as "[w]hen any person shall willfully and without force hold over any lands, tenements or other possessions, after the termination of the time for which they were demised or let to him, or the person under whom he claims...." § 534.030, RSMo 1994. "[T]here can be no unlawful detention by the tenant until his estate is terminated...." *Fisher v. Payton,* 219 S.W.2d 293, 296 (Mo.App.1949). *See also Kaimann v. Kaimann Bros.,* 182 S.W.2d 458, 460 (Mo.App.1944) ("[T]here could have been no unlawful detainer on defendant's part until after the giving of notice and the expiration of the time provided in it.").

Therefore, in order for the Davidsons to show unlawful detainer, they were required to prove that Mr. Kenney remained in possession after they validly terminated his month-to-month tenancy. Termination of a month-to-month tenancy is governed by Section 441.060. That Section provides:

> A tenancy at will or by sufferance, or for less than one year, may be terminated by the person entitled to the possession by giving one month's notice, in writing, to the person in possession, requiring him to move.

§ 441.060, RSMo 1994. "A month to month tenancy is determinable at the end of the month." *Fisher,* 219 S.W.2d at 296.

■ Cases have interpreted these requirements to mean that the tenancy can only be terminated at the end of a rental period and notice of that termination must be given at least one rental period prior to the termination date. "The law is that the statutory notice must terminate the occupancy on the day of the month succeeding that in which it is served, corresponding to the day when the occupancy began." *McIlvain v. Kavorinos,* 202 S.W.2d 103, 105 (Mo.App.1947), *quoting, Berner v. Gebhardt,* 87 Mo.App. 409 (1901). For this reason, if "either party desires to terminate the tenancy, he must give a month's notice of his intention. If he suffers a new month to commence, he cannot terminate the tenancy till the end of the next month, and in order to do so, he must give the required notice at or before the end of the current month." *Fisher,* 219 S.W.2d at 296, *quoting, Gunn et al. v. Sinclair,* 52 Mo. 327, 330 (1873).

The issue before us is whether the Davidsons gave adequate notice to vacate to Mr. Kenney under the law as set forth above. The Davidsons concede in their brief that the September 6, 1996 notice was not effective to terminate Mr. Kenney's tenancy on September 30, 1996, because it was not given one full month in advance of the latter date. But, they argue, this does not mean the notice was of no legal effect. Rather, they suggest, the notice should be considered sufficient to terminate the tenancy at the end of the next rental period, that is, on October 31, 1996. While they admit that this is inconsistent with the September 30, 1996, date stated in the notice itself, they say that the date is mere surplusage and the only important factor is that the tenant received notice to terminate more than thirty days before October 31, 1996.

---

1. It is unclear on what basis the court derived this specific figure; it is less than the full amount requested by the Davidsons.

The Davidsons cite no authority for their argument. The cases they refer to in their brief do not hold that inadequate notice can be effective to terminate a tenancy on a date other than that stated in the notice itself. Our own research has revealed, however, that their argument is consistent with the rule set out in the Restatement (Second) of Property. It states that "if the date stated in the notice for termination is not the end of a period or is too short a time before the end of a period, the notice will be effective to terminate the lease at the earliest possible date after the date stated." Restatement (Second) of Property § 1.5 cmt. f (1977).

Many states follow a different approach than that taken by the Restatement, however. These states hold, for example, that the requirements for an unlawful detainer action must be strictly construed, and that where the notice purports to require the tenant to vacate less than thirty days after the end of the month in which the notice is given, the notice is completely invalid and ineffective to terminate the tenancy at any date. *See, eg, Commonwealth v. Fultz,* 360 S.W.2d 216, 222 (Ky.1962), *citing, Pack v. Feuchtenberger,* 232 Ky. 267, 22 S.W.2d 914 (1929); *Kaplan v. Lopatin,* 156 Cal.App.3d 767, 202 Cal.Rptr. 912, 915 (1984), *citing, Arbenz v. Exley, Watkins & Co.,* 57 W.Va. 580, 50 S.E. 813 (1905); *Sanford v. Harvey,* 65 Mass. 93 (1853).

■ Like the states just mentioned, Missouri also follows the principle that the statutes governing notice in an unlawful detainer action must be strictly construed. *Schnitker v. Schnitker,* 690 S.W.2d 509, 510 (Mo.App. 1985). The reason for this strict construction is the harshness of the remedy allowed for unlawful detainer—double rents and profits. As stated in *Fritts v. Cloud Oak Flooring Co.,* 478 S.W.2d 8 (Mo.App.1972), where the landlord chooses "to invoke the harsh remedy of common-law forfeiture seeking not only to terminate the leasehold estate but also, by proceeding in unlawful detainer, to recover double damages and double rents and profits ... the landlord is held to scrupulous observance of every requirement of the common law, unless waived by agreement". *Id* at 12.

Prior Missouri cases have relied on these principles of strict construction to reverse judgments for the landlord for unlawful detainer where, as here, the landlord purported to require the tenant to vacate on less than the required notice. For example, in *Fisher,* 219 S.W.2d at 294–95, the landlord gave the tenant notice dated May 17, 1947, ordering the tenant to vacate the premises thirty days thereafter. At that time, rental periods were not required to begin or end on any particular day of the month, and thus the court had to determine when the rental period began. The court noted that the notice would be adequate if the rental period began on May 18, 1947, for it would then have given the renters the required rental period of notice to vacate. However, there was no evidence this was the day of the month the rental period began and ended. There was evidence that the tenant had paid rent and it had been accepted on May 19, 1947. The court said this could support the conclusion that the rental period began on the 19th of each month. If so, then the notice would be inadequate, for it would not have required the tenant to vacate at the end of the rental period. Clearly, however, the tenant was aware that the landlord wanted him to vacate. If *Fisher* had applied the Restatement approach argued for by the Davidsons, the court thus would have said that the notice was effective to require the tenants to vacate at the end of the next rental period. It did not do so. Rather, it held the notice to be ineffective, and reversed the judgment for unlawful detainer and remanded for entry of judgment in favor of the tenant. *Id.* at 296.

The same result was reached on similar facts in *McIlvain v. Kavorinos,* 202 S.W.2d 103, 105 (Mo.App.1947). On September 13, 1945, the landlord delivered notice to the tenant to vacate the premises not later than November 1, 1945. However, the landlord failed to present evidence that the tenancy was month-to-month. The court noted that, if the tenancy started on, for example, the fifth day of the month, then to be valid a notice delivered on September 13th could not require the tenant to vacate before November 5th, since that would be the end of the next full rental period succeeding the notice. The court did not then state that this meant that the September 13th notice purporting to

terminate the lease on November 1st was valid, but simply delayed in effect until November 5th, the end of the next rental period, as it would have done had it applied the rationale the Davidsons and the Restatement suggest we should follow. Rather, as in *Fisher*, the court simply reversed the judgment for the landlord for unlawful detainer since the notice, strictly construed, was not adequate.

■ The rationale of *Fisher* and *McIlvain* is directly applicable here. In light of Missouri's policy of strictly construing the notice requirement for unlawful detainer actions, and in accordance with the above cases, we hold that the September 6, 1996 notice here was inadequate to terminate the tenancy on any date. In order to terminate Mr. Kenney's tenancy on October 31, 1996, the Davidsons were required to send him notice on or before September 30, 1996, expressly stating they were terminating the tenancy on ·October 31, 1996, or at the end of the next rental period. They did not do so. The only notices they gave were the defective September 6, 1996, notice and their notice of October 31, 1996, notifying Mr. Kenney he was required to immediately vacate the premises. These notices were not effective to terminate the tenancy. For these reasons, we reverse the trial court's judgment for the Davidsons on their claim for unlawful detainer.[2]

Although we reverse the judgment for the Davidsons for unlawful detainer, we have determined that equity requires us to remand to allow the Davidsons the opportunity to replead. As we stated in *Blaine v. J.E. Jones Constr. Co.*, 841 S.W.2d 703 (Mo.App. 1992):

> Where a plaintiff has from the outset misconceived the law and has chosen a mistaken legal theory to submit to the jury for redress, we may reverse the judgment against the plaintiff and remand the cause to allow the plaintiff to plead and to submit another theory. We do so, however, where the evidence shows the plaintiff may recover upon another theory. And, we do so because the plaintiff's counsel has missed completely the appropriate theory. Simple fairness requires the plaintiff be given a meaningful day in court.

*Blaine, Id.* at 710. Similarly, in *Murphy v. Cole Nat'l Corp.*, 731 S.W.2d 28, 31–32 (Mo. App.1987), we affirmed the trial judge's grant of JNOV on plaintiff's res ipsa loquitur theory, but remanded for submission on specific negligence, stating:

> That practice of peremptory reversal for failure of proof, however, is subject to the paramount rule of fair adjudications. Thus, where the failure of proof results from a misconceived theory of recovery, but the evidence nevertheless shows a state of facts which may entitle the plaintiff to recover under a proper theory, in the interests of justice—and where the theory asserted at trial was not for strategic advantage—" 'the judgment will not be reversed outright, but instead in the exercise of a sound judicial discretion, *the case will be remanded to give [the plaintiff] the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.*"

731 S.W.2d at 31–32 (emphasis in original).

■ The rationale set out in these cases applies here. While the Davidsons did not plead a claim for rent and possession under Section 535.020, RSMo 1994, the facts which they pleaded and showed stated such a claim. Although the Davidsons are currently in possession of the property, they are still entitled to recover unpaid rent. It is unclear when the Davidsons first orally requested Mr. Kenney to pay back rent, but in any event their service of the summons following the filing of suit in November 1996 constituted adequate demand for rent due. Rent was unpaid for the months of October, November, and December, 1996. *See Charter Oak Inv. Co. v. Felker*, 231 Mo.App. 848, 96 S.W.2d 887 (1936). Moreover, they are also entitled,

---

**2.** Mr. Kenney also argues on appeal that the Davidsons failed to make any allegation in their complaint regarding the dollar amount of monthly rent and profits claimed and that the trial court should not have awarded the Davidsons money for waste or injury to the leased premises because the Davidsons did not plead such a claim or the dollar amount of such damages in their complaint. Because we are reversing the trial court's judgment for the Davidsons based on inadequate notice, it is not necessary to address these remaining issues.

upon a showing of negligence, to recover for damage or waste to the property beyond reasonable wear and tear. *See Enchanted Hills, Inc. v. Medlin,* 892 S.W.2d 722 (Mo. App.1994); *Brown v. Midwest Petroleum Co.,* 828 S.W.2d 686 (Mo.App.1992).

Because the Davidsons have shown facts which may entitle them to rent and damages for waste, we reverse and remand with directions to the trial court to permit them to replead in accordance with this opinion.

HANNA, P.J., and EDWIN H. SMITH, J., concur.